UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEITH JONES,              )
                             )
        Plaintiff,     )
                             )
    vs.            )      1:11-cv-00973-SEB-MJD
                             )
METROPOLITAN SCHOOL DISTRICT  )
OF DECATUR TOWNSHIP,    )
                             )
        Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO
STAY FINAL JUDGMENT ON SANCTIONS AND
DENYING PLAINTIFF'S MOTION TO STRIKE AND
DENYING PLAINTIFF'S MOTION FOR ORAL ARGUMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR LEAVE
TO FILE SURREPLY IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY
FINAL JUDGMENT ON SANCTIONS AND
GRANTING IN PART DEFENDANT'S MOTION FOR SANCTIONS**

       This cause is before the Court on cross motions for summary judgment:   Plaintiff's

filed on February 4, 2013 [docket no. 99] and Defendant's also filed on February 4, 2013

[dkt. no. 95]; Plaintiff's Motion to Strike [dkt. no. 127], filed on April 15, 2013; Plaintiff's

Motion to Stay Final Judgment on Sanctions [dkt. no. 92], filed on January 17, 2013;

Defendant's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Stay

Final Judgment on Sanctions [dkt. no. 118], filed on March 5, 2013; Defendant's Motion

for Sanctions [dkt. no. 110], filed on February 15, 2013; and Plaintiff's Motion for Oral

Argument [dkt. no. 128].

Plaintiff Keith Jones has brought this action against his former employer, Defendant, Metropolitan School District of Decatur Township ("MSDDT" or "School District"), alleging that the School District discriminated against him and then retaliated against him, in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. '' 621 *et seq*. and that this conduct by the School District constituted the intentional infliction of emotional distress under 28 U.S.C. ' 1343(4), 42 U.S.C. ' 2000e-(5), 29 U.S.C. ' 626(c), and Indiana law.   Dkt. No. 1.

## FACTUAL BACKGROUND

Mr. Jones was employed by MSDDT as a school police officer for approximately fourteen years from August 1996 until his termination in July 2010.   Id. at 2, ¶ 5.   Mr. Jones is a law enforcement officer who had been certified by the Indiana Law Enforcement Training Board.   Id. at 3, ¶ 10.   In his position at MSDDT, he performed general police patrol and school security duties and was authorized to make arrests based on a special arrangement with the Marion County Sheriff's Department.   Id. at 2-3, ¶ 8.   In 2010, the year he was discharged, he was the only evening shift patrol officer assigned at MSDDT, and his shift ran from 3:00 p.m. to 11:00 p.m.   Id. at 3, ¶ 9.

Prior to his discharge, Mr. Jones's supervisor, Chief David Kinsey, had informed him that MSDDT's administration was considering eliminating the evening shift police officer position, which would necessarily result in Mr. Jones's termination.   Id. at 3, ¶ 12.

2

Chief Kinsey also advised Mr. Jones that Dr. Jeffrey Baer, one of the assistant school superintendents, was "adamant about the elimination" of the position.  Id.  Chief Kinsey, in contrast, believed that eliminating the evening shift police officer position was "a dangerous idea, given the amount of crime … around the MSDDT's main campus and other school properties during the late afternoon and evening."  Id. at 3, ¶ 13.

Around June 30, 2010, the MSDDT administration terminated Mr. Jones's employment.  Id. at 3, ¶ 14.  In mid-July, Mr. Jones received a formal notification of dismissal in a letter from MSDDT advising him that the school board had voted to terminate Mr. Jones's employment as part of a "fiscal restructuring."  Id. at 4, ¶ 15.  Mr. Jones alleges that sometime around July 30, 2010, "certain administrators received close to a million dollars in perks disguised as 'savings' in the future."  Id.  Mr. Jones also claims that he "was on good terms with the school administrators, staff and students," and that he was not subjected to corrective counseling."  Id. at 3, ¶ 11.  On September 14, 2010, the School District hired a new employee to fill the patrol post who, at the time of his hiring, was under 40 years of age.  Id. at 5, ¶ 24.

On January 4, 2011, Mr. Jones filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging that MSDDT had discriminated against him based on his age when it terminated his employment.  Dkt. No. 74 at 4, ¶ 22.  On January 19, 2011, Dr. Baer was "recalled from retirement" to write a letter ("Baer Letter"), which was placed in Mr. Jones's personnel file and which stated that he did not believe Mr. Jones

3

was a good employee.[1]   The letter detailed that the School District had experienced several problems with Mr. Jones during his employment, including: (1) "[p]articipating in and starting damaging rumors about fellow employees;" (2) being "very negative about the district;" and (3) "misusing a corporation vehicle" by using the security patrol car off school property.   Id. at 4, ¶ 23.   But Mr. Jones notes that he had "had no previous write ups in his tenure" at MSDDT.   Id.

Subsequently, in representing MSDDT during the EEOC proceeding, Attorney Jon Bailey responded by letter to the EEOC charge.   Id. at 8, ¶ 45.   In that letter, Mr. Bailey made reference to the Baer Letter, attached it as an exhibit, noted Dr. Baer's reasons for selecting Mr. Jones for termination as set forth in the Baer Letter, and described Mr. Jones's job performance as "less than satisfactory."   Id. at 13, Ex. 1.

## PROCEDURAL HISTORY

The EEOC issued its right to sue notice on July 11, 2011, prompting Mr. Jones to file this lawsuit ("Lawsuit I") by his counsel against MSDDT, on July 21, 2011, on the basis of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and intentional infliction of emotional distress under Indiana state law.   Dkt. No. 1 at 1, ¶¶ 1-2.   Mr. Jones alleges that MSDDT terminated his employment due to his age and because he suffered from a serious chronic illness.   Id. at 5,

---

[1]   Dr. Baer was employed by the School District up to July 2010, the time that decisions regarding Mr. Jones's employment were made by MSDDT.   His retirement occurred sometime after Mr. Jones was terminated; however, the specific date of Dr. Baer's retirement is unclear from the record.   Dkt. No. 46, Pl.'s Br. in support of Motion for Summary Judgment, Ex. 8.

¶ 21.   On March 14, 2012, the parties stipulated to the dismissal with prejudice of the ADA claim, leaving the ADEA and intentional infliction of emotional distress claims for resolution.   Dkt. No. 36.

Mr. Jones filed a second, separate lawsuit ("Lawsuit II") on May 14, 2012 [dkt. no. 73] followed by an amended complaint on May 19, 2012 [dkt. no. 74], in Cause No. 1:12-cv-0650-JMS-MJD in which he named as Defendants:  MSDDT, Dr. Baer, Mr. Bailey and his law firm, as well as Susan Adams and Donald Stinson, who were MSDDT employees.   Id.   Lawsuit II was initially assigned to our colleague, Judge Jane Magnus-Stinson.[2]   Mr. Jones included the following claims in his amended complaint filed in Lawsuit II: (1) retaliation under the ADEA and 42 U.S.C. § 1981 against MSDDT, Ms. Adams, Mr. Stinson, and Dr. Baer (id. at 4-5); (2) civil conspiracy against Ms. Adams, Mr. Stinson, and Dr. Baer (id. at 5-8);   (3) attorney deceit against Mr. Bailey and his law firm (id. at 8-9);   (4) intentional infliction of emotional distress against all defendants (id. at 9);   and (5) defamation *per se* against MSDDT and Dr. Baer (id. at 4-5).   The School District filed a Motion for Judgment on the Pleadings on July 20, 2012.   Dkt. Nos. 18, 19.[3] Following briefing and oral argument on the pending motions, Mr. Jones voluntarily

---

[2]   When the complaint filed in Lawsuit II [dkt. no. 74] was amended, Lawsuit I [dkt. No. 1] remained unchanged, leaving the ADEA and intentional infliction of emotional distress claims pending in Lawsuit I.   For reasons not explained to us, Mr. Jones maintained the two separate lawsuits in the Indiana Southern District simultaneously.   Because Plaintiff's counsel failed to alert the Court that this lawsuit was related to Mr. Jones's prior case, the separate complaints were assigned to two judges, resulting in parallel litigations until the cases were ordered consolidated before Magistrate Judge Mark Dinsmore effective November 29, 2012.   Dkt. No. 72.
[3]   These documents may be found in the Lawsuit II docket, under related case no. 1:12-cv-00650-JMS-MJD.

dismissed several claims in a filing on September 11, 2012.  Dkt. Nos. 32, 33. [4] Subsequently, on October 26, 2012, Judge Stinson dismissed with prejudice each of the following claims:   § 1981 against all defendants; civil conspiracy against all defendants; intentional infliction of emotional distress against all defendants; ADEA retaliation against all individual defendants; defamation claim against MSDDT; and all claims against Ms. Adams and Mr. Stinson.  Dkt. Nos. 78, 79.  Mr. Jones's claims for defamation *per se* and attorney deceit, also brought in Lawsuit II, were dismissed without prejudice.  The sole surviving claim from the second amended complaint in Lawsuit II is, therefore, retaliation under ADEA.  Id.

The School District filed a Motion for Sanctions (Sanctions I) contemporaneously with its Motion for Judgment on the Pleadings in Lawsuit II on August 6, 2012.  Dkt. Nos. 23, 24.[5]  On October 26, 2012, Judge Stinson granted the School District an award of its attorney's fees and expenses related to Mr. Jones's attorney deceit claim for its lack of any "plausible legal or factual basis" upon which relief could be granted.  Dkt. No. 79 at 22-23.  With regard to the voluntarily dismissed claims, including the claims against Mr. Stinson and Ms. Adams, all state law claims against the School District, the § 1981 retaliation claim, civil conspiracy against Dr. Baer, and the ADEA retaliation claim against individual defendants, Judge Stinson determined that sanctions were also warranted "from the inception of those claims until their dismissal."  Id. at 23-24

---

[4] These documents may be found in the Lawsuit II docket, under related case no. 1:12-cv-00650-JMS-MJD.

[5] These documents may be found in the Lawsuit II docket, under related case no. 1:12-cv-00650-JMS-MJD.

Pursuant to Fed. R. Civ. P. Rule 42(a), all matters under these separate complaints were consolidated into the present lawsuit by Magistrate Judge Mark Dinsmore by order dated November 29, 2012.   Dkt. No. 72.   Accordingly, there remain before us for decision at this point only two employment claims:   age discrimination under ADEA and retaliation.   None of Mr. Jones's state law claims has survived.

Presently before the Court are several motions:   First, Mr. Jones requests that the Court stay its final judgment on the Sanctions I determination by Judge Stinson [dkt. no. 73]; second, the School District has filed a Motion in Support of Sanctions (Sanctions II) seeking further sanctions against Mr. Jones and his attorneys, on the basis of Mr. Jones's allegedly frivolous retaliation claim [dkt. no. 111]; and cross motions by both sides seeking summary judgment [dkt. nos. 95, 99].   We will first address the Motion for Summary Judgment by Mr. Jones followed by consideration of the Motion for Summary Judgment by the sole remaining Defendant, MSDDT.

## ANALYSIS

### I.      Cross-Motions for Summary Judgment

Summary judgment is appropriate when the record establishes that there is Ano genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.@   Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are deemed genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  Id. at 255. However, neither the Amere existence of some alleged factual dispute between the parties,@ id. at 247, nor the existence of Asome metaphysical doubt as to the material facts,@ Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party Abears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.@  Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  (See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870

F.2d 1327, 1330 (7th Cir. 1989)).   But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated.   (*See* <u>Celotex</u>, 477 U.S. at 322; <u>Ziliak v. AstraZeneca LP</u>, 324 F.3d 518, 520 (7th Cir. 2003)).   Further, a failure to prove one essential element Anecessarily renders all other facts immaterial.@   <u>Celotex</u>, 477 U.S. at 323.

Courts often confront cross-motions for summary judgment because Rules 56 (a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. (*See also* <u>Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.</u>, 651 F.3d 664, 671 (7th Cir.2011)).   "Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved." <u>Lebamoff Enterprises, Inc. v. Huskey</u>, 666 F.3d 455 (7th Cir. 2012) (citing <u>Franklin v. City of Evanston</u>, 384 F.3d 838, 842 (7th Cir.2004)). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion.   <u>Williamson v. Ind. Univ.</u>, 345 F.3d 459, 462 (7th Cir.2003).

Thus, in determining whether genuine and material factual disputes exist in this case, we have considered the parties= respective memoranda and the exhibits attached thereto, and have construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant.   <u>Matsushita</u> 475 U.S. at 574.

## A.     Age Discrimination Claim:

Mr. Jones claims that he was discharged and subsequently not considered for rehire

due to his advanced age.  The ADEA prohibits employers from, among other things, "discharg[ing] any individual ... because of such individual's age."  <u>Van Antwerp v. City of Peoria, Ill.</u>, 627 F.3d 295, 297 (7th Cir.2010) (quoting 29 U.S.C. § 623(a)(1)).   In order to survive a motion for summary judgment, a plaintiff in a discrimination case need not "produce the equivalent of an admission of guilt by the defendant."  <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 737 (7th Cir.1994).   Instead, to establish a violation of the ADEA, an employee must show that age "played a role in the employer's decision-making process and had a determinative influence on the outcome."  <u>Id.</u> (citing <u>Schuster v. Lucent Techs., Inc.</u>, 327 F.3d 569, 573 (7th Cir.2003)).   An employee may make this showing using either the direct or indirect method of proof.  <u>Id.</u>

Mr. Jones does not claim to have direct evidence of discrimination by MSDDT. Instead, he has elected to proceed under the familiar indirect method set forth in <u>McDonnell Douglas</u>.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). This method requires Mr. Jones to establish a *prima facie* case of discrimination by showing that: (1) he is a member of the protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably.  <u>Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 627 F.3d 596, 599–600 (7th Cir. 2010) (citing <u>Hildebrandt v. Illinois Dep't of Natural Res.</u>, 347 F.3d 1014, 1030 (7th Cir. 2003)).

Mr. Jones supports his *prima facie* showing of age-related discrimination by noting

that he was 60 years of age at the time of the reduction in force (RIF) and therefore was a member of a protected class.   Plaintiff's Affidavit ¶ 1.   Additionally, he suffered an adverse action—his job loss—as a result of the RIF, which occurred sometime around June or July 2010.[6]   Further, he was replaced by a younger police officer.   The School District does not dispute any of these factors cited by Mr. Jones.

There is deep disagreement, however, between the parties regarding whether Mr. Jones was meeting the School District's legitimate expectations of him prior to the RIF. Mr. Jones has enumerated his many qualifications for the position, including his certification with the Indiana Law Enforcement Academy and his experience as a police training instructor; nevertheless, while impressive, these credentials do not speak to the

---

[6]   Plaintiff's inconsistencies regarding the date of the adverse action related to his termination leave us more than a bit confused.   He provides no fewer than four different dates/time periods when he experienced the "adverse action" by the School District.   For example, he alleges that the date of his last day of employment was June 30, 2010; the timeframe when the MSDDT board of directors voted to approve the RIF was mid-July 2010; toward the end of July 2010, according to Mr. Jones, he received a call from Chief David Kinsey, informing him of the newly-opened position of evening shift officer; and sometime in September 2010 a younger man was hired to fill the patrol officer position.   The School District contends that the time began to toll on Mr. Jones's claims in June 2010, when Mr. Jones was still being paid by the district and had received no formal notice of his dismissal.   Mr. Jones maintains that the adverse action he experienced was not his termination; rather, it was when he learned that he was not subject to re-hiring and that MSDDT was planning to hire another evening shift school police officer to the position that Mr. Jones has previously held.   Mr. Jones's EEOC claim was submitted on January 4, 2011, within 180 days of the adverse action in mid-July 2010, namely, the vote by the MSDDT school board to terminate Mr. Jones along with six other employees.   Whether the adverse action was the termination by the board or the subsequent phone call from the Chief Kinsey, as Mr. Jones maintains, or the September 2010 hiring of a younger police officer, each of these events fell within the 180 day rule.   Since we accept Mr. Jones's contentions regarding the matter of timing, his argument regarding inadequate notice and posting requirements is not addressed. (Kephart v. Institute of Gas Technology, 581 F.2d 1287, 1289 (7th Cir. 1978): "The 7th Circuit has long held that the 180 day time period begins to run when a Plaintiff has actual notice of or reasonably should have been aware of the unlawful employment act that serves as the basis of his charge of discrimination.")

issue of whether Mr. Jones was fulfilling his duties with the School District in the expected fashion.   Pl.'s Aff. ¶12; Ex. I, Pl.'s Dep. 84:13-17, 128:3-4, 128:6-13, 129:2, 130:21-22, 131:15.   Because MSDDT did not maintain a system of periodic personnel review and evaluation (Adams Dep. 26:11-21; Ex. C, Adams Dep. 26:11-12, 26: 16-18), and because the only instance when Mr. Jones received any written performance review was in 1998, there is no evidence in the form of official personnel records to document or track Mr. Jones's actual performance at the time of the RIF.   Adams Dep. 26:7-8, 27:17-18. Therefore, we must rely on the testimony of the Plaintiff himself and others with whom and for whom he worked in order to determine the adequacy of his performance.

Thankfully, there is ample evidence of this sort in the record for the Court to review. Despite the School District's assertion that Mr. Jones's performance was sub-standard, we must defer to Mr. Jones's evidence and draw the appropriate inferences therefrom that show he was "meeting legitimate job expectations."   The fact that Chief David Kinsey, Mr. Jones's immediate supervisor, had called him to alert him to the fact that his old position had become available gives rise to the inference that Mr. Jones was being invited to submit his application so that he could be rehired.[7]   These facts considered in a light most favorable to Mr. Jones satisfy the elements of his *prima facie* case for age discrimination.   Thus, the burden shifts to MSDDT to offer a legitimate, nondiscriminatory reason for Mr. Jones's termination and its subsequent disinterest in

---

[7]   Chief Kinsey made Mr. Jones aware that Mr. Jones's old the position was vacant; however, Chief Kinsey's supervisory responsibilities did not include the power to hire or dismiss employees.

rehiring him into his former position.   Everroad v. Scott Truck Sys., Inc., 604 F.3d 471, 477 (7th Cir. 2010).

Regarding the School District's legitimate, nondiscriminatory reason for not rehiring Mr. Jones, Defendant begins by noting that Mr. Jones never actually applied for the position given to the younger officer and about which he complains in this litigation. Mr. Jones rejoins that though he did not submit a formal application for the position, he did express his interest in the patrol job during his conversation with Chief Kinsey, who subsequently cut him off from consideration.   Mr. Jones asserts that his telephone inquiry about the position showed more than "mere general interest."   (See Taylor v. Canteen Corp., 69 F.3d 773, 781 (7th Cir. 1995), citing Box v. A & P Tea Co., 772 F.2d 1372, 1377 (7th Cir.1985) (considering whether plaintiff established *prima facie* case and stating that the employee must do more than show "a general interest in obtaining some job"), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986)).   For summary judgment purposes, we will credit Plaintiff's contention, finding that a written application was not a technical prerequisite to being considered for the vacant patrol officer position.

Next, the School District proffers that its fiscal restructuring, which resulted in the 2010 RIF, was necessitated by a period of budget shortfalls beginning in 2003 and extending over the ensuing years.   As early as March 2009, the evening patrol shift and the late shift had been included in plans and discussions as areas for proposed fiscal reduction. Indeed, MSDDT eliminated the late shift patrol officer's position which was occupied by a person substantially younger than Mr. Jones, in 2009.   Stinson Aff. ¶ 3, Ex. 1.   During the

2010 RIF, a total of seven employees were terminated and various other positions were left unfilled.   Of the seven who were not covered by an automatic rehire or "recall" policy, two were under the age of thirty, and five were above the age of 50.   A total of sixty teachers were also dismissed, and numerous other teachers and administrators received retirement incentives, the combined effect of which the School District reports was to generate substantial cost savings.   Once Mr. Jones had been let go as part of the RIF, and an offer was not extended to him to return to his former position, he was in no different a position than several other employees who also were included in the RIF.   The School District explains that Mr. Jones had not been in a position that was subject to automatic recall.   Since Mr. Jones never officially applied for the position in 2010, the School District never officially considered his application for the rehire as evening shift officer. MSDDT further denies that age was a factor in Dr. Baer's decision to "hire anyone but" or "someone other than" Mr. Jones for the reopened spot.   Pl.'s Br. at 5, Def. Br. at 22.   The record reflects that Mr. Stinson relied on concerns voiced by Dr. Baer regarding Mr. Jones's negative attitude, proclivity to gossip, and his use of the squad car away from MSDDT property, causing him to want to hire any person other than Mr. Jones for the newly-opened position.   Def. Br. at 21.

We find that MSDDT has met its burden to show a nondiscriminatory, fiscal reason for the RIF and the subsequent disinterest in re-hiring Mr. Jones.   Thus, Mr. Jones must attempt to demonstrate that the reasons offered by the School District were in fact pretextual.   Id. (*See also* <u>Egonmwan v. Cook County Sheriff's Dep't</u>, 602 F.3d 845, 850

(7th Cir.2010)).   Mr. Jones's claim of pretext is based on his contention that the RIF was simply a ruse and that the School District's reasons for the RIF and subsequent decision to not rehire Mr. Jones was, at best, disingenuous.

Mr. Jones argues that the School District's fiscal restructuring reasons are "dishonest or phony" ((emphasis in original) Pl.'s Br. at 16) and that the concerns they expressed about his employment record are unsupported by his history of performance. However, to demonstrate pretext, Mr. Jones must do more than show that he was a "good enough" employee; Mr. Jones must show that the School District did not believe its own stated reasons for terminating him and refusing to consider him for rehire.   Everroad, 604 F.3d at 477 (citing Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008)).   Mr. Jones has the burden of establishing that even the School District did not believe its own stated reasons, or, alternately, that a reasonable jury could conclude that the reasons cited by the Defendant were dishonest and the true underlying reasons were "based on prohibited discriminatory animus." Benuzzi v. Board of Education of the City of Chicago, et. al., 647 F.3d 652 (7th Cir. 2011) (citing McJowan v. Deere & Co., 581 F.3d 575 (7th Cir. 2000)).   To do this, Mr. Jones's evidence must establish that either:   (1) the proffered reasons are not founded in fact; (2) the reasons provided by the defendant did not actually motivate the Defendant's personnel actions; or (3) the reasons provided are insufficient to motivate the actions.   Id.

Mr. Jones's first argument is that the fiscal restructuring by the School District was

simply a lie and that both the fiscal restructuring claim and the reasons given for not rehiring him were actually grounded in discriminatory intent.   The facts presented by Mr. Jones to contradict the need for fiscal restructuring, namely, the hiring of a summer custodian and another patrol officer at a lesser pay rate, however, neither show that the fiscal restructuring was factually unfounded nor do they illuminate the issue of the School District's purported discriminatory animus.   Pl.'s Br. at 18-19 and Pl.'s Resp. at 21-24. At summary judgment, Plaintiff is not required to present a complete portrait, depicting in detail all the possible facts in support of his contentions.   However, he is required to sketch enough of an argument with supportive evidence from which a jury could find in his favor on pretext.   Here, Mr. Jones comes up short, having proffered too few facts and too inconclusive and generalized assertions to ultimately be persuasive to any reasonable jury.

The fact that MSDDT never had in place a system or process of performing routine reviews of employee performance is unavailing here in Mr. Jones's efforts to prove discrimination.   It is undisputed that Mr. Jones never received corrective counseling or formal written discipline (for gossiping) after the single incident in 1998; and we accept as true that he did many "good things" while working for the School District.   Pl.'s Br. at 17-21.   Still, Mr. Jones has been unable to erode the veracity of the administration's policy determination that a RIF was required to stabilize the School District's financial situation and that its reasons for letting Mr. Jones go and then not rehiring him were based on it view that Mr. Jones, while in MSDDT's employ, was not meeting legitimate expectations.

Simply characterizing those statements as lies will not and does not suffice.

Mr. Jones attempts to invoke the "cat's paw" theory of discrimination as a means of salvaging his claims.   Financial austerity was not, Mr. Jones argues, the primary concern of the School District administrators when they ordered the RIF and then refused to rehire him.   Witness the substantial retirement packages, car allowances to the superintendent, and $19,000 health care stipends for certain employees, Jones says.   However, even if these actions reflected flawed decision making, bad decision making does not equal discriminatory intent.   (*See* Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 976 (7th Cir.2000) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir.1997)).   As courts have often observed, we "do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination."   O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 984 (7th Cir. 2001).   On the issue of pretext, our only concern is the honesty of the employer's explanation.   Here, in the case before us, we see not an inkling of evidence of dishonesty in the School District's explanation.

Taken as a whole, as Mr. Jones suggests we do, no other conclusion emerges.   Mr. Jones asserts that he was RIF-ed because of his age, and that he was not re-hired due to his advanced years; however, he has presented no evidence to support the conclusion that these personnel decisions by the School District were age-based.   It is undisputed that the re-hiring decision resulted in a younger person taking Mr. Jones's former position, and,

while this fact shows a possible relationship between the MSDDT's hiring decision and the affected employee's age, it does not, in and of itself, establish a discriminatory animus based on age.   Neither does it persuade us that the School District lied about its plan for fiscal restructuring when it reached the subsequent view that in terms of refilling that position anyone other than Mr. Jones would be better.   Were we to credit solely the fact that a younger replacement police officer was hired two months after Mr. Jones was RIF-ed as determinative of age discrimination, how could a hiring process ever be deemed legitimate and nondiscriminatory which simply happens to result in the hiring of a person under the age of forty as the most suitable candidate?   The evidence adduced by Mr. Jones, even viewed in its most favorable light to him, falls decidedly short.   No reasonable jury could find in favor of him on his claims of age discrimination under ADEA.   His Motion for Summary Judgment based age discrimination must be denied and the School District's Cross-Motion for Summary Judgment is granted.

**B.     Retaliation Claim:**

Mr. Jones also contends that the letter written by Dr. Baer ("Baer Letter") and placed in his personnel file constitutes direct evidence of retaliation, entitling him to summary judgment on this claim.   The School District counters that the Plaintiff has no evidence of any retaliatory motive and, therefore, it is entitled to summary judgment.

The <u>McDonnell Douglas</u> burden-shifting test applies to Mr. Jones's retaliation claim

just as it did with regard to his age discrimination claim.   Knox v. State of Indiana, 93 F.3d 1327, 1333 (7th Cir.1996).   In order to make out a *prima facie* case of retaliation, a plaintiff must present sufficient evidence to establish that: (1) he engaged in statutorily-protected conduct; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two.   Jones v. Res-Care, Inc., 613 F.3d 665, 671 (7th Cir. 2010) (citation omitted).   Under the McDonnell Douglas framework, if MSDDT shows a legitimate, non-discriminatory reason for its actions, the burden shifts back to Mr. Jones to show pretext.   As discussed *supra.,* the evidence presented on cross motions for summary judgment must be considered in the light most favorable to the non-movant. Matsushita, 475 U.S. 574.

It is well-settled that the filing of an EEOC charge is considered a statutorily protected activity for purposes of asserting an ADEA retaliation claim.   (*See* Smith v. Lafayette Bank & Trust Co., 674 F.3d 655, 658 (7th Cir. 2012); Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006); Ajayi v. Aramark Bus. Servs., 336 F.3d 520, 533 (7th Cir. 2003) (holding there is "no dispute that [the plaintiff] satisfied the first element by filing her EEOC charge")).   In filing his EEOC claim in January 2011, Mr. Jones engaged in protected activity under the ADEA.   The School District does not dispute that Mr. Jones has satisfied this first requirement, so we move onto the remaining elements of an ADEA retaliation claim.

When considering whether an employee suffered an adverse action in the ADEA retaliation context, the standard used is identical to that in the Title VII context, to wit,

whether a reasonable worker would be dissuaded from lodging a charge in the face of such action.  (*See* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006):  Actions constitute retaliation under Title VII if they could well "dissuade a reasonable worker from making or supporting a charge of discrimination.").   Mr. Jones proposes that the letter written by a MSDDT school administrator, Dr. Jeffrey Baer ("Baer Letter"), stating that Mr. Jones had:   "1) participated in damaging rumors about fellow employees; 2) had a negative attitude; and 3) misused a school vehicle," was an adverse employment action in that it was placed in Mr. Jones's personnel file and thus was available to be shared with prospective employers.

The School District maintains that the Baer Letter was written in preparation for litigation and cites as authority a recent decision in our court, which held:  "[C]onduct occurring within the course of litigation does not give rise to a retaliation claim because the conduct does not constitute an adverse employment action." Hofmann v. Aspen Dental Mgmt., Inc., 3:10-cv-37-SEB-WGH, 2011 WL 1600512, *1 (S.D. Ind. Apr. 27, 2011) (citing Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th Cir. 1998)).  We have no difficulty concluding that the letter clearly was written in response to Jones's filing of his EEOC claim; however, the ensuing action of placing the letter in Mr. Jones's personnel file must be evaluated separately.  Once the Baer Letter was placed in Mr. Jones's personnel file, the stated purpose of the Baer Letter as a form of preparation for litigation is called into question, because it could be reasonably argued that its purpose had changed to something more punitive, more averse to Mr. Jones's interests.

We ask, therefore, whether the letter recounting poor performance plausibly created an environment of sufficient intimidation to dissuade a reasonable employee from pursuing statutorily-protected rights.   To answer this question, we examine the evidence adduced by the parties.   Mr. Jones claims that once the Baer Letter was placed in his personnel file and was made available to anyone who would come within the rubric of its all-inclusive addressee—"To Whom it May Concern"—(as opposed, for example, to the EEOC) and retained in his personnel file for more than six months, the damage was done.[8]   Thus, he need not have specific evidence that the letter was, in fact, ever seen or referenced to prospective employers.   He further argues that the existence and availability of the letter generated the requisite intimidation, especially when viewed in close proximity in time to the filing of his EEOC complaint.   Pl.'s Resp. at 29.

Much of Plaintiff's argument, however, is based on mere speculation, even when viewed in a light favorable to him.   (*See* Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1014 (7th Cir. 1997), ruling that more than mere speculation is required to support an inference that protected activity and the employer's

---

[8]   The Plaintiff also suggests that the Court applied the wrong retaliation standard in its Lawsuit II analysis; however, the Court correctly identified the standard for retaliation as requiring consideration of the severity of the action to determine whether it was "made with sufficient force to dissuade a reasonable employee from exercising statutory rights.   Barton v. Zimmer, Inc., 662 F.3d 448, 456 (7th Cir. 2011)."   Dkt. No. 79 at 7.   Yet, there may have been confusion, to which Plaintiff refers, in our colleague's reference to "actual harm" as the standard in her summary.   Id. at 10.   Any outstanding confusion was clarified by our colleague in her conclusion that it was premature to determine whether Mr. Jones's retaliation claim met this standard, stating:   "The Court cannot conclude at this stage of the litigation—when it is required to give Mr. Jones the benefit of the doubt regarding his allegations—that placement of the Baer Letter in Mr. Jones' personnel file was not an adverse action which would support an ADEA retaliation claim." Id. at 9.

acts are linked.)   Assuming, *arguendo*, that Mr. Jones has presented a successful *prima facie* argument for retaliation, he is faced with defeating MSDDT's claim that the letter was prepared in the course of litigation.   About that assertion, Plaintiff must prove it a lie.

That has proven too high a mountain for him to climb, however, because Mr. Jones is unable to point to a single fact in the record to establish that the Baer Letter was shared or could have been shared with anyone who was considering Jones's application for employment.   In order to "dissuade a reasonable worker" from lodging discrimination charges against an employer, the action by the employer would conceivably need to cause significant harm to that employee (current or former) or at least serve to deter others from filing charges because a similar letter would be created by the employer to cause the employee harm.   (*See* <u>Burlington N.</u>, 126 S.Ct. 2405 at 2415, establishing an objective standard for judging harm, which distinguishes significant from trivial harm.)   Even under the most generous reading, there is no conceivable circumstance in which a letter, such as the Baer Letter, placed in the personnel file after the date of the plaintiff's claim, in the course of litigation, which was shared with no one other than the EEOC, and which was removed from the employment file once noticed, would satisfy this standard.

Regarding whether a reasonable worker would be dissuaded from "supporting a charge of discrimination" in federal litigation, it appears clear that the written opinion of a prior employer, documented and placed in one's personnel file, would dissuade the former employee from seeking a remedy for discrimination either with the EEOC or the Court. The placement of a negative reference letter in the personnel file of claimant, by itself, is

unlikely to deter such a filing.   We concede that matters such as these are ordinarily best left to a full development of evidence, and resolution by the final factfinder, not by the Court on summary judgment; but Plaintiff has created virtually no evidentiary basis for his arguments regarding employer intimidation that are anything more than conjecture and speculation.   Thus, we conclude that the burden of showing pretext has not been satisfied by the Plaintiff, and his claim for retaliation must be dismissed and the School District's Cross-Motion for Summary Judgment is granted.[9]

**C.     Intentional Infliction of Emotional Distress Claim:**

The Court has previously dismissed with prejudice Mr. Jones's claim for intentional infliction of emotional distress [October 26, 2012, dkt. nos. 78, 79].   In addition, pursuant to Fed. R. Civ. P. Rule 59(e), we granted the amended version of Plaintiff's Partial Motion to Dismiss [dkt. nos. 32, 33],[10] which stated that "intentional infliction of emotional distress claims against all defendants" were dismissed with prejudice.   Therefore, Plaintiff is precluded from pursuing further this claim and no further discussion is required here. Plaintiff's Motion for Summary Judgment as to the intentional infliction of emotional distress claim is denied and the Defendant's Cross-Motion for Summary Judgment is granted.   Plaintiff's accompanying Motion to Strike (dkt. no. 127), requesting that waived

---

9   Plaintiff has requested that oral argument be allowed due to "unique issues" and "voluminous and complex facts;" however, we see no special circumstances that merit this request and accordingly deny Plaintiff's Motion for Oral Argument.   Dkt. No. 128.

10   These documents may be found in the Lawsuit II docket, under related case no. 1:12-cv-00650-JMS-MJD.

facts be struck from the Defendant's Reply in Support of Summary Judgment (docket no. 124) is also denied for the foregoing reasons.   We next turn to the motion by the Plaintiff regarding Sanctions I, which were awarded by our colleague on October 26, 2012.    Dkt. Nos. 79, 108.

## II.    Motion for Stay of Final Judgment on Sanctions I

When an action presents multiple claims for relief or multiple parties are engaged in litigation, the Court may direct entry of a final judgment as to one or more, but not all, of the claims, "only if the Court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).   Once the final judgment has been entered by the Court, an applicant may request a stay under Fed. R. Civ. P. 62(c).   In ruling on such a request, the Court must determine:   (1) if there is a strong likelihood of success on the merits of the claim; (2) whether the applicant will suffer irreparable harm absent a stay; (3) if other interested parties will be substantially injured; and (4) "where the public interest lies."   (*See also* Fed. R. App. P. 8(a) stating that where a stay of an injunction pending appeal has been denied by a district court, the request for a stay may be renewed in the appellate court.)

The record makes clear that no final judgment has been entered in this case; therefore, Mr. Jones's requested stay appears to be premature.   Defendants contend that this issue is not yet ripe, since neither a final judgment has been entered nor an appeal taken.   Mr. Jones, in an effort to forestall an award of sanctions against him, argues that his age discrimination and retaliation claims have merit and may survive, thereby

24

offsetting any award of sanctions.   But, as explicated above, those claims have been shown not to survive summary judgment and are therefore unavailable as a basis to offset an award of sanctions.   Let us suppose that Mr. Jones's claims had survived; even so, his argument is unavailing.

In order to prevail, the applicant bears the burden of showing that the merits are on his side and Mr. Jones has fallen well short of accomplishing that task.   Moreover, he must not only show that he might prevail on the merits, he must also address the harms to the affected parties and show that public interest is on his side, neither of which he has attempted.   In the best of circumstances, these showings would be a difficult hurdle to overcome.   With respect to the interest of the concerned parties, there appears to be great harm in requiring that individual litigants who are now no longer enjoined in this matter, namely, Ms. Susan Adams, Dr. Jeffrey Baer, Mr. Donald Stinson, Mr. Jon Bailey and his law firm, await the result of litigation to which they should never have been party.

Accordingly, Mr. Jones's requested stay is denied for failure to establish any reasonable grounds upon which it could be granted.[11]   Next, we take up the issue of sanctions as proposed by the Defendant for Mr. Jones's retaliation claim.

---

11   Despite the addition of citations, Plaintiff raises no new arguments related to Fed. R. Civ. P. 62 and Fed. R. Civ. P. 54(b) in his Reply Brief (dkt. no. 114).   Therefore, Defendant's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Stay Final Judgment on Sanctions is denied.

III.    **MSDDT's Motion for Sanctions (Sanctions II) on Jones's ADEA Retaliation Claim**

The School District seeks sanctions against Mr. Jones and his counsel under 28 U.S.C. § 1927 and Fed. R. Civ. P. 11 for filing and pursuing an ADEA retaliation claim and also seeks attorney fees against Jones's counsel under 42 U.S.C. § 1988.   It is clear at this point that his ADEA claim lacks evidentiary support.   According to MSDDT, Mr. Jones does not have evidence capable of persuading a jury, of which insufficiency he was well aware before the summary judgment motion was filed.   Nevertheless, Mr. Jones persisted in his assertion that the Baer Letter, which had been placed in his personnel file but not shared with another party outside the present litigation, would deter a reasonable employee from asserting his or her employment rights.   On December 3, 2012, the MSDDT informed Mr. Jones's counsel that there was no basis in law to support the ADEA retaliation claim, that Mr. Jones should dismiss the claim, and that upon failing to do so MSDDT would seek redress through sanctions.   Despite this forewarning, Mr. Jones persisted in his retaliation claim.

**Sanctions under 28 U.S.C. § 1927.**   Section 1927 provides that a lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Carr v. Tillery, 591 F.3d 909, 919 (7th Cir.2010). Clearly, the purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.   Riddle &

26

Assocs., P.C. v. Kelly, 414 F.3d 832, 835 (7th Cir.2005).   A § 1927 award imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable."   Bad faith is required to support a § 1927 award, but there is a distinction between subjective and objective bad faith.   Dal Pozzo v. Basic Mach. Co., 463 F.3d 609, 614 (7th Cir.2006).   A showing of subjective bad faith, which is more difficult to prove, is not always necessary; it "must be shown only if the conduct under consideration had an objectively colorable basis." Id.   Objective bad faith does not necessarily mean ill will; reckless indifference to the law will suffice.   Id.   The Court has discretion whether to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by pursuing a claim that is without a plausible legal or factual basis.   Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir.2006).

Once discovery failed to produce evidence of intimidation, Mr. Jones should have known his claims regarding retaliation were groundless.   However, even in response to this request for sanctions (Sanctions II) by the School District, Mr. Jones persists in his retaliation arguments, claiming that the incorrect retaliation standard was relied upon in Lawsuit I, and that the Baer Letter placed in his personnel file was for purposes of retaliation.   Pl.'s Resp. at 3-5.

The record reflects that Plaintiff multiplied the proceedings by filing a motion for summary judgment, filing requests for oral argument, and forcing the Defendant into discovery in a situation where he had virtually no evidentiary support for his retaliation claim, except for his own self-serving assertions that the contents of the Baer Letter were a

27

lie.   No objective, reasonable person would be able to see a claim in that evidence.   Mr.

Jones lacked any evidence to support the conclusion he was asserting, namely, that Dr.

Baer's comments in the letter were pretextual lies.   We conclude, therefore, that sanctions

under 28 U.S.C. § 1927 are proper to compensate the School District for its attorney fees

incurred in defending against this unfounded claim.

     **Sanctions under Fed. R. Civ. P. 11.**   Federal Rule of Civil Procedure 11(b)

provides that:

> (b) Representations to Court. By presenting to the court a pleading,
> written motion, or other paper—whether by signing, filing,
> submitting, or later advocating it—an attorney ... certifies that to the
> best of the person's knowledge, information, and belief, formed
> after an inquiry reasonable under the circumstances:
> …
>> (3) the allegations and other factual contentions have
>> evidentiary support or, if specifically so identified, are likely
>> to have evidentiary support after a reasonable opportunity
>> for further investigation or discovery …

A Rule 11 inquiry scrutinizes the "reasonableness of the party's opposition" in the context

of the factual foundation presented.   Teamsters Local No. 579 v. B & M Transit, Inc., 882

F.2d 274, 280 (7th Cir. 1989).   Even those actions filed in the "best of faith, by a lawyer

convinced of the justice of his client's cause," may be subject to sanctions, if the attorney

fails to make a reasonable inquiry into the facts at hand.   Id.   A "letter" or "demand"

given to opposing counsel twenty-one days before the filing of a Rule 11 Motion satisfies

the notice requirement of Rule 11(c)(1)(A).   Nisenbaum v. Milwaukee Cnty., 333 F.3d

804, 808 (7th Cir. 2003).

Again, Mr. Jones's case reflects an unjustifiable optimism; no reasonable attorney would conclude, based on the Baer Letter, that Mr. Jones had experienced retaliation on the basis of his age discrimination claim to the EEOC.   Counsel's persistence in pursuing these claims far beyond the discovery stage of this litigation is more than assiduous representation.   This doggedness, coupled with the admonition delivered in writing by the Defendant on December 3, 2012, well in advance of the twenty-one day requirement, indicating their intent to pursue sanctions causes the Court to conclude that monetary sanctions against Mr. Jones's counsel under Rule 11 are also appropriate.

**Sanctions under 42 U.S.C. § 1988.**  The School District has also requested an award of attorney fees under 42 U.S.C. § 1988,[12] which allows the Court to grant reasonable legal fees in circumstances where a defendant prevails in proceedings regarding certain civil rights claims.   There are three component parts to § 1988 which must be satisfied by defendants in order to present a successful argument for the grant of attorney fees:   (1) the civil rights claim in question must fall under the list of protected proceedings and actions; (2) the requesting party must have prevailed in the disputed action; and (3) plaintiff's action must be shown to be either "frivolous, unreasonable, or groundless," or defendant must show "that plaintiff continued to litigate after it became clear that the claim

---

[12]    42 U.S.C. § 1988(b), Attorney's fees:   "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. § 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb *et seq.*], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. § 2000cc *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."

was frivolous, unreasonable, or groundless."   (*See* <u>Cooney v. Casady</u>, 10-3842, 2013 WL 4406668 (7th Cir. Aug. 19, 2013), citing <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

Throughout their briefing, both parties have assumed that the standards applicable to the § 1988 fee shifting statute for civil rights litigation apply to the present case.   In particular, Defendant argues that Mr. Jones's retaliation claim under the ADEA is frivolous, justifying a recovery of its fees encountered in it defense.   However, ADEA—which falls under 29 U.S.C. ' ' 621 *et seq*.,—is not specifically listed as a basis for recovery under § 1988.   In any event, the School District has failed to identify the part of § 1988 which authorizes its request.   Thus, the School District has failed to satisfy the first required criterion of its § 1988 request for attorney fees.   Since that prerequisite has not been met, we shall not address the other two.   We therefore hold that an award of attorney's fees by Mr. Jones to the School District in not warranted here.

## CONCLUSION

Having considered the parties= briefing and documentary evidence filed in connection with these motions and for the reasons detailed above, Plaintiff=s Motion for Summary Judgment [dkt. no. 99] is <u>DENIED</u>, Plaintiff=s Motion to Strike [dkt. no. 127] is <u>DENIED</u>, Plaintiff's Motion to Stay Final Judgment on Sanctions [dkt. no. 92] is <u>DENIED</u>, Plaintiff's Motion for Oral Argument [dkt. no. 128] is <u>DENIED</u>, Defendant=s Motion for Summary Judgment [dkt. no. 95] is <u>GRANTED</u>, Defendant's Motion for Leave to File

Surreply in Opposition to Plaintiff's Motion to Stay Final Judgment on Sanctions [dkt. no. 118] is <u>DENIED</u>, and Defendant's Motion for Sanctions [dkt. no. 110] is <u>GRANTED IN PART</u>.

Counsel are hereby <u>ORDERED</u> to confer with one another to reach an agreement regarding a reasonable amount of attorneys' fees, costs, and expenses incurred by Defendant and for which Mr. Jones and his counsel should be responsible based on the foregoing Order.  Should the parties' voluntary attempts at resolution fail, they should confer with the Magistrate Judge as soon as feasible.

IT IS SO ORDERED.

Date: _____09/24/2013_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

31

Copies to:

Adam Lenkowsky
alenkowsky@roberts-bishop.com

Kenneth T. Roberts
ktrjustice@aol.com

Rudy Coram
rcoram@roberts-bishop.com

Karen G. Sharp
ksharp@boselaw.com